# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SPIZZIRRI LAW, LLC and<br>PAUL M. SPIZZIRRI,<br><br>Plaintiffs,<br><br>vs.<br><br>JANET YELLEN in her official<br>capacity as the Secretary of the<br>United States Department of the<br>Treasury,<br>UNITED STATES<br>DEPARTMENT OF THE<br>TREASURY, and HIMAMAULI<br>DAS, in his official capacity as<br>Acting Director of the Financial<br>Crimes Enforcement Network,<br>    Defendants. | CIVIL ACTION<br><br>CASE NO: _____<br><br><br><br>**VERIFIED COMPLAINT** |

Plaintiffs Spizzirri Law, LLC ("SL"), and Paul Spizzirri, sole owner and shareholder of SL ("Spizzirri"), bring this civil action for injunctive relief against Janet Yellen, in her official capacity as the Secretary of the United States Department of the Treasury ("Yellen"), the United States Department of the Treasury (the "Treasury"), and Himamauli Das, in his official capacity as Acting Director of the Financial Crimes Enforcement Network ("Das"), and allege as follows:

## PRELIMINARY STATEMENT

1.      The Corporate Transparency Act, Pub. L. No. 116-283, 134 Stat. 4604, *codified at* 31 U.S.C. § 5336 (the "CTA" or the "Act") is a federal statute enacted on January 1, 2021, that mandates that persons forming entities under State law report "sensitive information," *id.* § 5336 note (6), to the Federal Financial Crimes Enforcement Network ("FinCEN"), or face monetary penalties, imprisonment, or both—has been declared unconstitutional by the Northern District Court of Alabama, Northeastern Division, on March 1, 2024. *See National Small Business United d/b/a/ the National Small Business Association, et al. v. Yellen*, et al. 2024 WL 899372 (N.D. Ala. 2024).

2.      Plaintiffs seek nationwide injunctive relief against the CTA's implementation to avoid an unconstitutional intrusion by the federal government into the rights of U.S. persons seeking to form corporate entities under State law and to protect the sovereignty of the States. The CTA directs the Secretary of the Treasury to promulgate regulations to implement the statute. On September 29, 2022, a final rule implementing the CTA's beneficial ownership reporting requirements was issued to take effect on January 1, 2024 for newly-formed entities and January 1, 2025 for existing entities. Consequently, immediate action by this Court to enjoin enforcement of the Act nationally is necessary.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States and has jurisdiction to render declaratory relief because an "actual controversy" exists between the parties within the meaning of 28 U.S.C. § 2201(a).

4.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(3) because no real property is involved, Plaintiffs reside in this District and Defendants are agencies or officers of the United States sued in their official capacities.

## PARTIES

5.    Plaintiff, Paul Spizzirri, ("Spizzirri") is an attorney licensed to practice law in the States of Georgia and South Dakota. He is also admitted to practice in the United States Tax Court and the United States Supreme Court. He resides in Cobb County, Georgia.

6.    Plaintiff, Spizzirri Law, LLC ("SL") is a Georgia Limited Liability Company that is organized under the laws of the State of Georgia. SL is a commercial law firm that specializes in corporate formations, transactions, tax liabilities, and commercial litigation. Spizzirri is the sole owner of SL.

7.    The Defendant United States Department of the Treasury is an executive-branch department of the federal government headquartered in Washington, D.C. responsible for the administration and enforcement of the CTA.

8.    Defendant Yellen is the Secretary of the United States Treasury and is named as a party in her official capacity.

9.    Defendant Das is Acting Director of Financial Criminal Enforcement Network, is responsible for the enforcement of the CTA, and is named as a party in his official capacity.

10.    All conditions precedent to this action have either been fulfilled or waived.

## FACTUAL BACKGROUND & GENERAL ALLEGATIONS

11.    Under the CTA, "reporting companies" must disclose the identity, street address, date of birth, and unique identifying number of any "beneficial owner" of said entity. SL qualifies as a "reporting company" under the CTA. 33 U.S.C.A. § 5536(a)(11)(a).

12.    On March 11, 2024, the District Court for the Northern District of Alabama issued an order declaring the CTA unconstitutional and granting injunctive relief to the NSBA to preclude enforcement of the CTA as to the Plaintiffs in that case alone. *National Small Business United d/b/a National Small Business Association, et al. v. Janet Yellen, in her official capacity as Secretary of the Treasury et al*, 2024 WL 899372, Case No. 5:22-cv-1448-LCB, N.D. Ala., Northeastern Division (hereinafter "*NSBA v. Yellen*").

13.    The Government filed an appeal of this ruling that is pending. *See* United States Case No. 24-10736, 11th Cir. Ct. App.

14.    Despite the ruling in *NSBA v. Yellen*, Plaintiff SL is still a "reporting company" under the CTA and as such must report the identity or each of its "beneficial owners," a term which is so vague that the CTA eventually resorts to simply defining it "anyone with substantial control over the entity" or who owns "not less than 25%" of the reporting company. 33 U.S.C.A. § 5336(a)(3).

15.    Failure to report this sensitive identifying information is criminalized and subject to up to $10,000 in fines and two (2) years in prison.

16.    As a law firm and its sole owner, Plaintiffs may, at first glance, seem to be able to easily comply with this reporting requirement. However, SL is a law firm that represents numerous corporate entities in formations, transactions, litigation, and tax-related matters. Plaintiffs direct and advise their clients on matters ranging from simple transactions to complex corporate formations. Further, Plaintiffs are often tasked with carrying out complex business strategies for their clients. As such, Plaintiffs have serious questions as to whether they are considered to have "substantial control" over any of their clients, as that term is wholly undefined in the CTA.

17.    If either Plaintiff is considered a "beneficial owner" of their clients by virtue of their professional relationship, then a plain interpretation of the CTA would

require Plaintiffs to report the identities of every "beneficial owner" of each of their clients.

18.    SL and Spizzirri are considered a "company applicant" and a broader reading of the CTA could even require the clients of SL to report it as a "beneficial owner" of themselves because they direct and approve the ultimate decisions in matters in which SL represents them. This would make SL a "beneficial owner" in hundreds, if not thousands, of entities even though it owns no stock in them.

19.    SL is also a company applicant for every entity it forms or assists in forming after January 1, 2024.

20.    Disturbingly, this information is not protected by any right of privacy. This sweeping collection of information is subject to any public records request. This means that any person, entity, or government could easily learn the identifying information of one of Plaintiffs' clients with a simple public records request.

21.    Notably, the CTA carves out clear exceptions to the term "beneficial owner" that includes certain public accounting firms, public utilities, and various financial institutions. 33 U.S.C.A § 5336(a)(11)(b)(xv). Law firms are not included among them.

22.    Without any additional requirement under the CTA., there is no doubt that Plaintiffs would be required to disclose sensitive attorney-client privileged information that would otherwise be wholly protected under the Georgia Rules of

Professional Conduct. Indeed, the CTA may compel attorneys to violate their sacred oaths and divulge information that could only be obtained via a search warrant supported by probable cause.

23.    As detailed in the *NSBA v. Yellen* opinion, the CTA's reporting requirements have no nexus with the exercise of any legitimate legislative power. Defendants should be enjoined from enforcing it against Plaintiffs.

24.    On June 28, 2024, the United States Supreme Court decided *Loper Bright Enterprises v. Raimondo*. 603 U.S. ___ (2024), 144 S. Ct. 2244. In *Loper Bright*, the Supreme Court overruled the longstanding rule of *Chevron U.S.A., Inc. v. National Resources Defense Counsel, Inc.* (467 U.S. 837 (1984)) that required courts to provide deference to any permissible agency reading of a statute when implementing administrative rules.

25.    By overruling *Chevron*, the Supreme Court explicitly required courts to make their own decisions regarding the propriety of a particular administrative rule. "In the business of statutory interpretation, if it is not the best, it is not permissible." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2267. The Court further noted that when an administrative agency is determining the scope of its own power, deference to that agency's interpretation is "*least* appropriate." *Id.*

26.    This Court is under no obligation to give any deference whatsoever to the Government's interpretation of the CTA. Rather, the holding in *Loper Bright*

requires the Court to make its own determination as to whether the Defendants' drastically overbroad reading of the CTA is consistent with legislative intent or violates the Constitution.

## COUNT I
### Unconstitutional Usurpation of the States' Power to Regulate Entity Formations in Excess of Congress's Constitutional Powers
### (U.S. Const. Art. I, amends. IX, X)

27.     Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1 through 26.

28.     Throughout the existence of this nation the States have had independent authority to determine the formation of corporations and otherwise regulate the formation and governance over these corporations. *See* Ronald E. Seavoy, *The Public Service Origins of the American Business Corporation*, 52 Bus. History R. 30, 33 (1978).

29.     The Constitution did not intrude on this power of the States to charter corporations. At the Constitutional Convention, Virginia delegate James Madison introduced a proposal to give Congress the authority "to grant charters of incorporation where the interest of the U.S. might require & the legislative provisions of individual States may be incompetent." 2 *The Records of the Federal Convention of 1787*, at 615 (Max Farrand, ed., 1911). Madison's proposal reflected the settled understanding that the States possessed—and would continue to retain under the new Constitution—the primary sovereign powers for chartering corporate

entities. *See id.* at 616 (containing James Madison's notes documenting the defeat of his proposal for an explicit Congressional power of chartering corporations by a vote of 3 in favor and 8 against).

30.     The Supreme Court made clear in 1819 that the Constitution does not vest the federal government with any authority to dictate to the States the terms under which they charter companies. *See Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819). This remains true today, as corporations formed for private business purposes have proliferated and now outnumber the public-purpose and non-commercial corporations prevalent in the Founding era. The States remain the primary sovereigns for the creation of corporate entities and, pursuant to the well-established "internal affairs" doctrine, the internal functioning of such entities remains a matter of the law of the State of formation. "It thus is an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares." *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 91, (1987).

31.     Despite this original constitutional meaning, history, and tradition, the CTA aims to establish "a clear, Federal standard for incorporation practices," 31 U.S.C. § 5336 note (5)(A), above and beyond what State entity laws require, imposing a penalty—mandatory disclosure of names, addresses, birth dates, and identification numbers of all beneficial owners and applicants—on persons who seek

to form entities under State law. As detailed above, failure to make these disclosures is punishable by fines and imprisonment. In addition, the CTA also interferes with State authority to determine the permissible structures of corporate ownership by prohibiting any State from authorizing the issuance of "a certificate in bearer form evidencing either a whole or fractional interest" in an entity created and organized under that State's laws. 31 U.S.C. § 5336(f). Upon information and belief, although many States authorized such bearer certificates through the early twenty-first century, no State currently does so. Nevertheless, the Act's categorical prohibition is an unprecedented intrusion on the States' sole authority to regulate the formation and governance of State-entities' internal affairs.

32.    One of the enumerated powers of Congress—and perhaps the most heavily used of those powers in recent decades—is the power to regulate foreign, interstate, or Indian commerce. Congress also can wield its taxing power to tax income earned by individuals through corporate entities as it currently does through federal income taxes on corporations. However, Congress has no regulatory interest or constitutional authority over corporate formation because a reporting company has not yet engaged in any foreign, interstate, or Indian commerce at the moment of its inception. The formation of an entity under State law is an entirely ministerial act and many entities will engage in no activity until some indeterminate time after they have been formed.

33.     Many of the "reporting companies" subject to the Act may **never** engage in any such foreign, interstate, or Indian commerce.  State law permits the formation of a corporate entity for numerous purposes unrelated to commerce, such as local property holding or associational entities like neighborhood organizations, homeowners associations, and residential housing associations.   For example. O.C.G.A. § 14-2-301 (2022) states that every corporation incorporated in the State of Georgia has the purpose of engaging in any lawful business unless otherwise provided by this title." O.C.G.A. § 14-2-301 (2022). Section 101(b) of the Delaware General Corporation Law provides that a "corporation may be incorporated or organized under this chapter to conduct or promote any lawful business **or purposes**, except as may otherwise be provided by the Constitution or other law of this State." 8 Del. Code § 101(b) (emphasis added).  Similarly, Section 18-106(a) of the Delaware Limited Liability Company Act provides that "[a] limited liability company may carry on any lawful business, purpose or activity, whether or not for profit . . . ." 6 Del. Code § 18-1101.  A large proportion of the CTA's coverage is thus likely to include entities that do not engage in commerce or business at all, or that engage in strictly intrastate commerce (such as residential real property holding) outside the reach of federal regulation.

34.     This fact exposes a fundamental flaw in the CTA's structure: it does not regulate any specifically identified **commercial** activity.  "The Constitution

grants Congress the power to '*regulate* Commerce.' The power to *regulate* commerce presupposes the existence of commercial activity to be regulated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 520 (2012) (emphasis in original). As discussed above, there is no exercise of commerce inherent in the creation of a state-chartered entity; it is an entirely ministerial act, and many entities so formed do not engage in any commercial activity. By imposing requirements on the mere act of entity formation without any inkling as to whether the formed entity will engage in commercial activity, the CTA clearly exceeds Congress's power to regulate interstate, foreign, and Indian commerce.

35. The CTA commandeers State agencies by coercing States into giving notice to State filers of the CTA's reporting requirements and providing filers with a copy of the CTA filing form. Because the States are the only agents capable of providing notice to entity formation filers at the time of formation, States are likely to feel compelled to provide the notice and the FinCEN filing form to protect their citizens from the severe criminal penalties that would result from failure to comply with the CTA's filing requirements.

36. Law firms are not always privy to information about their client's ownership. The CTA would compel law firms to seek this information out from their clients or to obtain it from third parties.

37. Through these requirements, the CTA violates Plaintiffs' rights and

the rights of any similarly situated persons by exceeding the enumerated powers of the federal government set forth in Article I, Section 8 of the Constitution of the United States, violating the Ninth and Tenth Amendments, and violating the constitutional principles of federalism and retained State sovereignty upon which this Nation was founded.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.    Declare the CTA to be unconstitutional;

B.    Declare that the CTA exceeds Congress's authority under Article I of the Constitution and encroaches upon the States' respective sovereignties in violation of the Ninth and Tenth Amendments and constitutional principles of federalism and retained State sovereignty;

C.    Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.    Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## COUNT II
### Unconstitutional Invasion of Privacy
### Unreasonable Search and Seizure Violation of the Fourth Amendment
### Compelled Self Incrimination Violation of the Fifth Amendment  Right of
### Privacy Violation of the Ninth Amendment
### (U.S. Const. amends. IV, V, IX)

38.     Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1-37 above.

39.     The CTA is a statute providing for criminal punishments enacted for the purpose of harvesting "sensitive" personal information from individuals to create a database for law enforcement purposes by FinCEN and other United States and foreign law-enforcement and intelligence agencies.  The stated purpose of the CTA is to provide the federal government with a supplemental means of enforcing federal criminal laws.  But no matter the degree of invasiveness, suspicionless searches and compelled disclosures are never allowed if their principal end is crime-solving.

40.     Privacy is often a key motivation in State entity formation.  No State has chosen to require the extent of disclosure of beneficial ownership and applicant information upon filing that the CTA mandates.  Upon information and belief, no State, for instance, appears to require birth dates and personal identification numbers of filers.  The States' entity-formation laws reflect the States' judgment that individuals need not disclose sensitive information as a condition of forming corporate entities.  Individuals who form an entity under such State laws have a

reasonable expectation of privacy from the intrusion of the federal government as to that information. The CTA's requirements violate that expectation of privacy by compelling the disclosure of that information by individuals protected by the Fourth, Fifth, and Ninth Amendments.

41.    The CTA contains no limitations on the provision of the required personal information to situations where there is an articulable individualized suspicion of a crime or wrongdoing by such beneficial owners and applicants. The CTA also authorizes the provision of private, personal information to foreign governments, federal regulators, and regulatory agencies without any court authorization or specific requirements regarding those federal and foreign government agencies' need for the information. In addition, it forces law firm "applicants" to violate the attorney-client privilege.

42.    By requiring, under threat of criminal penalty, reporting companies to provide individuals' "sensitive" personal information for law enforcement purposes in the absence of specific prior indicia of wrongdoing, the CTA deprives Plaintiffs and the members of the NSBA of their privacy rights, and violates the Fourth Amendment, Fifth Amendment, and Ninth Amendment of the Constitution of the United States.

43.    By compelling disclosures and permitting the release of sensitive personal data to federal and foreign government agencies without the reporting

company's consent or authorization from a court of competent jurisdiction, *see* 31

U.S.C. § 5336(c)(2)(B) (requiring court authorization for requests from state, local,

or tribal law enforcement agencies and consent from a financial institution, without

imposing a similar requirement of court authorization for requests from federal or

non-U.S. law enforcement agencies), the CTA violates the Fourth, Fifth, and Ninth

Amendment rights of Plaintiffs and the members of the NSBA.

 **WHEREFORE**, Plaintiffs respectfully request that this Court:

 A. Declare the CTA to be unconstitutional;

 B. Declare that the CTA violates (i) the Fourth Amendment's reasonable

expectation of privacy from unreasonable searches and seizures without probable

cause or articulable suspicion; (ii) the Fifth Amendment's privilege against self-

incrimination; and (iii) the Ninth Amendment's retention of unenumerated rights to

the People;

 C. Defendants and any other agency or employee acting on behalf of the

United States from enforcing the Act against the Plaintiffs and to take such actions

as are necessary and proper to remedy their violations deriving from any such actual

or attempted enforcement; and

 D. Award Plaintiffs their costs and grant such other relief as the Court

may deem just and proper.

## COUNT III
### Compelled Speech and Unreasonable Burdens on the Freedoms of Speech and Association (U.S. Const. amend. I)

44.     Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1- 43 above.

45.     Under the CTA, the obligation to report personal information to the federal government arises at the time of formation of an entity under State law. The CTA forces filers to disclose more personal information to the federal government than what is required to be disclosed under State entity-formation statutes; in most States, disclosure of "beneficial ownership" as expansively set forth in the CTA and "applicant" law firm personal information is not required at all. State laws providing for entity formation, however, reflect the States' respective judgments that the provision of such information is not a necessary or appropriate prerequisite of entity formation.

46.     Some U.S. persons form or seek to form entities under State law, without seeking 501(c) federal tax-exempt status, for social or other non-commercial reasons, such as to organize a private social club or to hold a family vacation property. Many of these entities and the U.S. persons who would have to be registered under the CTA have a heightened reason to desire privacy. The CTA compels such entities and individuals to publicly reveal their associations to the federal government, which may in turn transmit that information upon request to:

17

(i) federal and State law enforcement agencies, courts, and prosecutors; (ii) foreign governments and law enforcement authorities; (iii) financial institutions; and (iv) various federal regulators and regulatory agencies. This forced disclosure will also deter such persons from exercising their rights of free speech and association and dissuade others from joining or assuming leadership positions in the entities (and thus arguably becoming "beneficial owners").

47.    The United States does not have a compelling, overriding interest in obtaining the information required by the CTA because less onerous alternatives are available to accomplish the stated goals of the CTA and the methods employed by the Act are not narrowly tailored for their stated purpose. The most obvious and direct way to stem money laundering and international terrorism funding is to ramp up regulation and scrutiny of large cross-border money transfers, for instance, by banks, financial agents, and escrow agents. Vacuuming up personal information about every American who sets up or has a significant stake in a corporate entity is overkill given the CTA's stated aims. The requirements of the CTA are neither justified by nor necessary to promote the stated goals of the CTA.

48.    By requiring, under threat of criminal sanction, Plaintiffs to disclose information in the manner mandated by the CTA despite the availability of less onerous alternative methods to achieve the statute's stated goals, the CTA's disclosure requirements constitute compelled speech in violation of the First

Amendment to the Constitution of the United States.

49.     By requiring U.S. persons who have formed or wish to form a legal entity to engage in protected speech despite the availability of less onerous alternative methods to achieve the stated goals of the CTA, the CTA violates the First Amendment by burdening the right to speech and private association. As the Supreme Court recently affirmed, "a substantial relation to an important interest is not enough to save a disclosure regime that is insufficiently tailored. This requirement makes sense. Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly—'[b]ecause First Amendment freedoms need breathing space to survive.'" *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.     Declare the CTA to be unconstitutional;

B.     Declare that the CTA violates the First Amendment's right to speech and private association and prohibition on compelled speech;

C.     Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.     Award Plaintiffs their costs and grant such other relief as the Court

may deem just and proper.

## COUNT IV

### Unconstitutional Violation of Due Process (U.S. Const. amend. V)

50.     Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1 - 49 above.

51.     Both the CTA and the FinCEN rules relating to the CTA fail to provide definitions specific enough for Plaintiffs, members of the NSBA, or other ordinary small businesses or non-business entities to understand what conduct is required to avoid criminal sanctions including, but not limited to, failing to sufficiently define "beneficial owner," "understanding," "relationship," "substantial control," and "applicant." All these terms, most significantly "beneficial owner" and "applicant," have no obvious analogue in State entity formation laws, which typically address "organizers" and "incorporators." In addition, the CTA's overall framework for mandatory reporting, updating, access, and record-keeping is so vague and complex that Plaintiffs, members of the NSBA, or other ordinary small businesses or non-business entities cannot reasonably comply with these requirements.

52.     Should Plaintiffs, an attorney and his law firm that represents multiple business entities, be forced to attempt to comply with the vague and complex requirements of the CTA to avoid criminal penalties, they will be forced to incur substantial costs and other burdens. The stated goals of the CTA do not justify

the enormous burden it places on small businesses and non-business entities and can be accomplished through less onerous alternative means.

53.    By subjecting Plaintiffs and all other individuals, including millions of U.S. persons, covered by the CTA to potential criminal sanctions without adequate notice of the actions required to avoid the sanctions, and, by the same token, expanding the federal government's discretion in enforcing the requirements, the CTA violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.    Declare the CTA to be unconstitutional;

B.    Declare that the CTA violates the due process requirements of the Fifth Amendment;

C.    Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.    Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## COUNT V
### Unconstitutional Violation of the Rights to Free Speech and Counsel (U.S. Const. amend. I and VI)

54.    Plaintiffs restate and re-allege paragraphs 1 through 53 as if fully set forth herein.

55.    All persons and entities have a right to counsel under the First and Sixth Amendments to the Constitution.

56.    The CTA requires attorneys and law firms to disclose attorney-client privileged information including names, addresses, birth dates, and identification numbers of all beneficial owners and applicants that they provide legal services to.

57.    Such a requirement would require Plaintiffs to violate O.C.G.A. § 25-5-501(a)(2), O.C.G.A. § 24-9-5, and Rule 1.6 of the Georgia Rules of Professional Conduct.

58.    By subjecting Plaintiffs and all other individuals, including millions of attorneys and law firms, covered by the CTA to potential criminal sanctions if they do not violate their statutory and ethical duties and, by the same token, expanding the federal government's discretion in enforcing the requirements, the CTA violates the Free Speech Clause of the First Amendment to the Constitution of the United States and the Right to Counsel of the Sixth Amendment of the Constitution of the United States.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.    Declare the CTA to be unconstitutional;

B.    Declare that the CTA violates the rights to free speech and to counsel of the First and Sixth Amendments;

C.    Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.    Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## COUNT VI
### Injunctive Relief

59.    This is an action for injunctive relief pursuant to Rule 65(d), Fed.R.Civ.P. (2024).

60.    Plaintiffs seek an injunction prohibiting the Defendants from enforcing the reporting requirements of the CTA against them with regard to SL or any other entity which SL has or is representing.

61.    The reporting requirements of the CTA will force attorneys and law firms, including Plaintiffs, to report information that is protected by the attorney-client privilege.

62.     The Georgia Rules of Professional Conduct requires attorneys to hold in confidence "all information gained in the professional relationship" between attorney and client. Rule 1.6(a), Ga. R. Prof. Cond. An attorney faces the possibility of disbarment for a violation of this confidence. Rule 1.6(c), Ga. R. Prof. Cond.

63.     Specifically, the following information is protected by the attorney-client privilege and will also be subject to the reporting requirements of the CTA:

        a.     The identity of clients;

        b.     The addresses of clients;

        c.     The ownership interest amounts of clients, if they are corporations;

        d.     The identity of the owners of client corporations.

64.     Plaintiffs will suffer irreparable injury if they are not granted injunctive relief because, under a plain reading of the CTA and its accompanying final rule, Plaintiffs will be required to report sensitive, identifying information of its clients to the government which is not subject to any privacy protections and therefore accessible to the public.

65.     Once this information is reported it will be a bell that cannot be unrung. The threatened injury to the Plaintiffs outweighs any harm to the Defendants resulting from injunctive relief.

66.     Injunctive relief is not against the public interest.

67.    The Plaintiffs have a strong likelihood of success on the merits of seeking injunctive relief, especially since another District Court has already ruled that the CTA's reporting requirements are unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A.    Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

B.    Declare the CTA unconstitutional and in violation of the

C.    Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## VERIFICATION

IN THE STATE OF GEORGIA
COUNTY OF GWINNETT

1. My name is Paul Spizzirri.

2. I am over the age of 18 and am competent to submit this affidavit.

3. I am an attorney licensed to practice in the states of Georgia and South Dakota.

4. I am the owner of Spizzirri Law, LLC.

5. All factual allegations in this Complaint are true and correct.

FURTHER AFFIANT SAYETH NOT.

_____

Paul M. Spizzirri

STATE OF GEORGIA, COUNTY OF _____*COBB*_____,

The foregoing instrument was acknowledged before me this _6th JANUARY_,

2024 by _PAUL M SPIZZIRRI_ (name of person acknowledging), who is

personally known to me or who has produced _GA Driver's License_ (type of

identification) as identification.

_____
Signature of Notary Public

_____*V BURNS*_____
Print, Type, or Stamp

Respectfully submitted, this 9th day of January 2025.

**SPIZZIRRI LAW, LLC**

*/s/ Cory S. Simmons*
Cory S. Simmons
Georgia Bar No. 234195
*Attorneys for Plaintiff*

3379 Peachtree Rd NE, Suite 700
Atlanta, GA 30326
(404) 474-7168
cory@spizzirri.law